UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CIV-60114-RUIZ/STRAUSS

FUTURE METALS LLC,

      Plaintiff,

v.

FRANK RUGGIERO,

      Defendant.

_____/

## ORDER GRANTING MOTION FOR LEAVE TO AMEND COMPLAINT

**THIS CAUSE** comes before me upon Plaintiff's Motion for Leave to Amend Complaint to Add Claim for Violation of Illinois Trade Secret Act ("Motion to Amend"). (DE 51). The District Court has referred the case to me for rulings on all pre-trial, non-dispositive matters and for issuance of a Report and Recommendation on any dispositive matters ("Referral"). (DE 24). Defendant filed a response ("Response") (DE 77), and Plaintiff has replied ("Reply") (DE 84). Therefore, the Motion to Amend is ripe for review. Having reviewed the Motion to Amend, the Response, the Reply and the record in this case, and being otherwise duly advised, the Motion to Amend (DE 51) is **GRANTED** for the reasons stated herein.

## BACKGROUND

The parties' dispute arises from Defendant's employment with Plaintiff and subsequent voluntary resignation from that employment to work for its allegedly most significant direct competitor, TW Metals, Inc. (the "TW Metals"). (DE 1 at ¶¶34-35, 44). Plaintiff filed a six-count Verified Complaint ("Complaint") on January 15, 2021, alleging the following causes of action:

Count I – Misappropriation of Trade Secrets Pursuant to the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*;

Count II – Violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(2)(C);

Count III – Misappropriation of Trade Secrets in Violation of Pennsylvania's Uniform Trade Secrets Act ("PUTSA"), 12 Pa. C.S.A., § 5301, *et seq.*;

Count IV – Misappropriation of Trade Secrets in Violation of Florida's Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. § 688.002;

Count V – Breach of the Confidentiality Agreement; and

Count VI – Breach of Fiduciary Duty/Duty of Loyalty. 327671933

(DE 1).

In its Complaint, Plaintiff alleged that Defendant is a former executive that Plaintiff employed for more than thirteen (13) years who worked in a key sales position. *Id.* at ¶¶19-20. Defendant voluntarily resigned his position with Plaintiff on January 4, 2021, effective January 15, 2021, after Plaintiff made an announcement in September 2020 that it had elected Mr. John Buckridge to the position of president instead of Defendant. (DE 1at ¶34; DE 23-1 at ¶5). Plaintiff learned, after Defendant's resignation, that he had accepted a position with TW Metals in late November 2020 but had continued working for Plaintiff and had continued acquiring confidential information about Plaintiff by, among other things,  participating in strategic planning and sales meetings.  (DE 1 at ¶35; DE 23-1 at ¶29).  Plaintiff specifically alleged that, after accepting employment with TW Metals, Defendant attended Plaintiff's week-long corporate strategy and planning meeting in December 2020, saved numerous proprietary documents to his desktop, downloaded to an external storage device confidential information of Plaintiff and sent a business expansion plan to the president of TW Metals that was essentially a plagiarized copy of a plan prepared by Plaintiff's president.  *Id.* at ¶¶35(a)-(d).  Among other relief sought, the Complaint requested that "Defendant be temporarily, preliminarily, and permanently enjoined and restrained

for a period of time deemed proper by the Court to protect [Plaintiff's] trade secrets, *from directly or indirectly working for* or providing services or information to [TW Metals], any competing business in which he may have an ownership interest, or any other direct competitor of [Plaintiff]." *Id.* at 21, ¶B (emphasis added).

Plaintiff filed Plaintiff's Expedited Motion for Temporary Restraining Order and Preliminary Injunction ("First TRO Motion") on January 19, 2021. (DE 5). The District Court held a status conference on January 22, 2021 regarding the First TRO Motion and ordered Plaintiff to file a report by January 25, 2021 pertaining to the parties' efforts to reach an agreement as to the relief sought. (DE 15). Plaintiff's status report (DE 16) filed on January 25, 2021 reported that the parties worked collaboratively to reach an agreement and stated that the Parties would submit a Stipulated Consent Injunction and Order ("Proposed Stipulated Order"). On January 26, 2021, the parties filed a Proposed Stipulated Order. (DE 17). The District Court then entered the same day the Stipulated Order, which administratively closed the case. (DE 18). The Stipulated Order was to remain in effect for forty-five (45) days, following which the parties were directed to file a status report regarding the parties' efforts to resolve the dispute. (DE 18 at 5).

Relevant here, the Stipulated Order included the parties' agreement that Defendant would be "enjoined, restrained, and prohibited from . . . violating the terms of his Confidentiality Agreement." (DE 17 at 3; DE 18 at 2). The Confidentiality Agreement includes a choice of law provision stating as follows:

> GOVERNING LAW AND VENUE. This Agreement shall be construed, and the relationship between the parties determined, in accordance with the laws of the State of Illinois, notwithstanding any choice-of-law principle that might dictate a different governing law. Each party irrevocably agrees, consents, and submits to jurisdiction and venue in the federal and state courts located in Cook County, Illinois, with respect to any dispute arising out of or relating in any way to this Agreement.

(DE 17-1 at 4; DE 18).  The Confidentiality Agreement also contains a Non-Solicit and Non-Interference provision stating, in pertinent part, that "during employment and for a period of two years following the conclusion of employment with the Company, [Defendant] shall not interfere with or adversely affect the Company's relationships with any customer or other entity with which [Defendant] did business or had personal contact in performing duties for the Company."  (DE 17-1 at 2; DE 18; DE 23-1 at 14).  "Company" is defined as Marmon Holdings, Inc., "or any of its direct or indirect subsidiaries."  (DE 17-1 at 2).  Plaintiff is a wholly-owned subsidiary of Marmon/Keystone LLC ("Marmon/Keystone"), which is itself a wholly-owned subsidiary of Marmon Distribution Services, Inc. ("Marmon Distribution").  (DE 51-1 at ¶1).  Marmon Distribution is a corporation that is organized under the laws of the State of Delaware and that has its principal place of business in the State of Pennsylvania.  *Id.*  Plaintiff, Marmon/Keystone, and Marmon Distribution are "ultimately owned by Marmon Holdings, Inc., which is headquartered in Illinois."  *Id.*  Plaintiff is a limited liability company having its principal place of business in Broward County, Florida.  (DE 18 at ¶1; DE 51-1 at ¶1).

On March 15, 2021, Plaintiff filed a status report ("March 15 Status Report") (DE 19) and a motion to reopen the case ("Motion to Reopen") (DE 20).  Plaintiff's March 15 Status Report (DE 19) and its Motion to Reopen (DE 20 at ¶6) both stated similar allegations – that Defendant had misappropriated and continued to misappropriate Plaintiff's Confidential Information.  On March 16, 2021, the District Court issued an Order Reopening Case that provided for Defendant to file his answer to the Complaint within thirty-five (35) days.[1]  (DE 22).  Also, on March 16, 2021, Plaintiff filed the pending Plaintiff's Renewed and Expedited Motion for Temporary

---

[1] Defendant filed Defendant's Answer and Affirmative Defenses to Verified Complaint on April 20, 2021 ("Answer").  (DE 39).

Restraining Order and Preliminary Injunction requesting a temporary restraining order as well as a hearing for its Motion for Preliminary Injunction ("Renewed Motion").[2]  (DE 21; DE 21-4).

Pertinent here, Plaintiff's Renewed Motion argued that the court may grant an injunction to prevent actual or threatened misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3)(A)(i) and that Florida, Illinois, and Pennsylvania similarly provide for injunctive relief to prevent actual or threatened misappropriation of trade secrets.  (DE 21 at 9-10).[3]

Pursuant to the Referral, I held a hearing on March 24, 2021 regarding Plaintiff's motion for a temporary restraining order.  (DE 32).  On April 13, 2021, I issued a Report and Recommendation recommending that Plaintiff's motion for a temporary restraining order (DE 21) be granted in part to continue the Stipulated Order until July 2, 2021 ("April 2021 Report").  (DE 38).  Otherwise, I recommended that the motion for a temporary restraining order be denied.  *Id.*  On April 28, 2021, the District Court affirmed and adopted the April 2021 Report. (DE 43).

On May 21, 2021, Plaintiff filed the instant Motion to Amend.  (DE 51).  Subsequent to the filing of the Motion to Amend, on June 15, 2021, the District Court entered a scheduling order ("Scheduling Order").  (DE 82).  The Scheduling Order set trial to begin in this case on April 25,

---

[2] On June 2, 2021, I held an Evidentiary Hearing on Plaintiff's pending Motion for a Preliminary Injunction (DE 21).  (DE 75 at 7:3).  Additionally, on June 3, 2021, I issued an order requiring the parties to file post-hearing briefs (DE 74), and the parties complied (DE 88; DE 89).

[3] Specifically, Plaintiff argued that TW Metals was headquartered in Pennsylvania, and that Defendant had acted on behalf of TW Metals.  (DE 21 at 10, n.8).  However, in addressing Plaintiff's motion for a temporary restraining order, I found that Plaintiff had not established a basis for Pennsylvania law to apply in this case because TW Metals is not a party to this action and because Plaintiff failed to sufficiently allege that Defendant acted as an agent of TW Metals. (DE 38 at n.7).

2022. *Id.* The deadline to amend pleadings was set for July 26, 2021, and the discovery deadline was set for December 28, 2021. *Id.*

The Motion to Amend seeks to add a claim for misappropriation of trade secrets under Illinois Uniform Trade Secrets Act ("IUTSA") on grounds that the Confidentiality Agreement that Defendant signed is governed by Illinois law pursuant to a choice of law provision, and the Confidentiality Agreement would reasonably extend to claims of misappropriation between the parties.[4] (DE 51 at 2). Defendant argues that Plaintiff's claim for a violation of IUTSA is futile because Illinois lacks significant contacts with the parties in this action and also argues that the request to amend in order to add the IUTSA claim should be denied because it violates Florida's public policy. (DE 77). Plaintiff, on the other hand, argues that it may plead in the alternative under Rule 8(d) of the Federal Rules of Civil Procedure, and "it is premature to address the choice-of-law issues without a complete factual record." (DE 84). Furthermore, Plaintiff argues that the IUTSA claim is not futile "because there are significant contacts with the State of Illinois." *Id.* I address the parties' arguments below.

---

[4] Plaintiff argues that the Court found that the language of the Confidentiality Agreement extends to claims of misappropriation but that "the Court expressed uncertainty as to the extent to which Illinois law would apply to the state-law claims of misappropriation as pled in the complaint." (DE 51 at 2). Plaintiff further argues that "[t]he Court concluded therefore that Illinois law would apply only to Plaintiff's breach of contract claim and Florida law would apply to Plaintiff's state-law trade secret misappropriation claim." (DE 51 at 2). The April 2021 Report that Plaintiff cites *actually* states, in relevant part, that "I conclude that the parties did not express an intent, nor did they agree, in the Confidentiality Agreement to apply Illinois law to every dispute that might touch upon or involve the Confidentiality Agreement." (DE 38 at 28). Indeed, I explained that the Confidentiality Agreement's choice of law provision is narrow and did not extend to "any dispute arising out of or relating in any way to the agreement." *Id.* Therefore, "I conclude[d] that Illinois law applie[d] to the breach of contract claim and that Plaintiff properly br[ought] a trade secret misappropriation claim under Florida's Uniform Trade Secrets Act, Fla. Stat. § 688.002." *Id.* at 29. Nonetheless, findings at the stage of the proceedings addressed by the April 2021 Report are not binding on later stages that benefit from a more developed factual and legal record. *See Jones v. Governor of Fla.*, 950 F.3d 795, 832, n.15 (11th Cir. 2020) (citing *Univ. of Tex. V. Camenisch*, 451 U.S. 390, 305 (1981)).

## **LEGAL STANDARD**

Under Federal Rules of Civil Procedure 15(a)(1), a party may amend its pleading once as a matter of course twenty-one days after serving it or twenty-one days after the service of a responsive pleading.  Fed. R. Civ. P. 15 (a)(1).  After the time to amend as a matter of course has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  However, a "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) ("[U]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.").

Courts consider several factors when ruling on a motion for leave to amend under Rule 15(a)(2) including "undue delay, bad faith or dilatory motive . . ., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340 (11th Cir. 2014) (quoting *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.,* 556 F.3d 1232, 1241 (11th Cir. 2009)).  *See also Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) ("A district court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

If the claim to be added by amendment cannot withstand a Fed. R. Civ. P. 12(b)(6) motion to dismiss, as Defendant argues is the case here, then the amendment is properly denied as futile.

7

*Fla. Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520–21 (11th Cir. 1996) (affirming the decision to deny a motion for leave to amend because the additional proposed claim could not withstand a motion to dismiss); *see also Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988).  In analyzing the proposed amendment for futility under Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations and view them in the light most favorable to the pleading party.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).  A court will find that a plaintiff fails to state a claim under Rule 12(b)(6) only when the factual allegations fail to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In other words, a proposed claim is futile if it does not "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).

## DISCUSSION

Here, there are no allegations regarding undue delay, bad faith or dilatory motive.  Nor has there been repeated failure to cure deficiencies.  Furthermore, Defendant does not object on grounds of undue prejudice.  Indeed, this litigation is in its early stages.  Plaintiff filed the Motion to Amend thirty-one (31) days after Defendant filed his Answer and prior to the District Court entering a scheduling order.  (DE 51; DE 39; DE 82).  Therefore, I conclude there is no basis to deny an opportunity to amend due to prejudice.

Rather, as noted previously, Defendant argues that amendment would be futile because the claim that Plaintiff seeks leave to add – violation of the IUTSA – cannot withstand a Rule 12(b)(6) motion to dismiss.  (DE 77 at 1-10).  Accepting this argument would require the Court to conclusively decide a choice of law dispute: whether or not Illinois law applies to Plaintiff's misappropriation of trade secret claim.  Defendant also specifically argues that, "[t]he choice of

law question, at issue in the instant motion, is properly brought at the 'motion to dismiss stage' of these proceedings." *Id.* at 3-4 (citing *Flickinger v. Love's Travel Stops & Country Stores, Inc.*, 8:20-CV-2212-T-33CPT, 2020 WL 6484974, at *2 (M.D. Fla. Nov. 4, 2020) (addressing choice of law issue by finding that "the facts unquestionably favor the application of Georgia substantive law" and citing *In re Takata Airbag Prods. Liab. Litig.*, No. 14-24009-CV-MORENO, 2016 WL 6072406, at *3 (S.D. Fla. Oct. 14, 2016) (finding choice of law issue could be addressed at motion-to-dismiss stage because no further factual development was necessary)), (hereinafter, "*Takata*"); *Rossi v. Pocono Point, LLC*, No. 6:08-cv-750-Orl-28KRS, 2009 WL 435064, at *4 (M.D. Fla. Feb. 20, 2009) (addressing choice of law *sua sponte* relative to a motion for default judgment). Defendant additionally argues that the amendment violates Florida's public policy. *Id.* at 11-13.

Plaintiff argues that Defendant's reliance on *Takata* is misplaced because there, unlike here, the choice of law issue had been briefed, and the *Takata* court could decide the issue without further factual development. (DE 84 at 2). Plaintiff also argues that, contrary to Defendant's assertion, courts generally consider a choice of law analysis to be inappropriate at the motion to dismiss stage. *Id.* at 3 (citing *Tufts v. Hay*, No. 618CV572ORL37DCI, 2018 WL 11249187, at *2 (M.D. Fla. Aug. 10, 2018) ("[C]ourts generally construe a choice of law analysis as inappropriate at the motion to dismiss stage.")) Plaintiff cites several cases in support of its contention, i.e., *Inetianbor v. CashCall, Inc.*, No. 13-60066-CIV, 2015 WL 11438191, at *1-2 (S.D. Fla. June 29, 2015) (denying a defendant's motion to dismiss claims, which were related to a lending dispute, because "the record in its present state [did] not permit the Court to determine the enforceability or applicability of the choice-of-law . . . clause[ ] in the Loan Agreement"); *Boardwalk Fresh Burgers & Fries, Inc. v. Wang*, No. 8:19-CV-2527-VMC-CPT, 2021 WL 372825, at *2 (M.D. Fla. Feb. 3, 2021) ("Given the limited factual record and lack of complete briefing on the choice-of-

law issue, the Court declines to issue a holding that Florida, rather than Ohio or Maryland law, applies to the claims in this action."); *Joe Hand Promotions, Inc. v. Hart*, No. 11-80971-CIV, 2012 WL 1289731, at *2 (S.D. Fla. Apr. 16, 2012) (addressing motion to dismiss and stating that "[a]t this juncture, in the absence of record evidence relative to [Florida's 'most significant relationship test' for determining which state law governs], it is premature to decide which state law applies").

Here, I find it premature to decide the choice of law issue in the absence of complete briefing on the issue and without further factual development of the record. The briefing fails to address several questions affecting the analysis the Court must use to determine the choice of law question. Moreover, undertaking such analysis requires exploring and evaluating facts alleged in the proposed Amended Complaint.

"A federal district court sitting in diversity must apply the choice of law rules of the forum state." *Jeffers v. Kerzner Int'l Hotels Ltd.*, 319 F. Supp. 3d 1267, 1270 (S.D. Fla. 2018) (citing *Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1115 (11th Cir. 1996)). Therefore, this Court must apply Florida's choice of law rules. "As a preliminary matter, the Court determines whether the issue sounds in tort, contracts, property law, etc." *Id.* (citing *Grupo Televisa, S.A. v. Telemundo Commc'ns. Grp.*, Inc., 485 F.3d 1233, 1240 (11th Cir. 2007).

As Defendant argues, Florida applies the "most significant relationship" test of the Restatement (Second) of Conflict of Laws ("Restatement") to resolve choice of law issues. (DE 77 at 4). Indeed, as the Eleventh Circuit has held:

> Florida resolves conflict-of-laws questions according to the "most significant relationship" test outlined in the Restatement (Second) of Conflict of Laws. *Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla.1980). The Restatement (Second) of Conflict of Laws provides a "General [Tort] Principle" in section 145 that is intended to inform courts as they apply the more specific "Choice of Law Principles" outlined in section 6. The more specific "Choice of Law Principles" apply to all areas of law which determine choice of law through a most significant relationship test, not just to issues of tort.

*Grupo Televisa, S.A.*, 485 F.3d at 1240.  The "Choice of Law Principles" listed in section 6 are as follows:

> a) the needs of the interstate and international systems,
>
> b) the relevant policies of the forum,
>
> c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> d) the protection of justified expectations,
>
> e) the basic policies underlying the particular field of law,
>
> f) certainty, predictability and uniformity of result, and
>
> g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflicts of Laws § 6 (1971).  Section 145 of the Restatement states, in relevant part, as follows:

> (2) Contacts to be taken into account in applying the principles of s 6 to determine the law applicable to an issue include:
>
> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145(2) (1971).  Section 146 states that "[i]n an action for personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in s 6 to the occurrence and the parties, in which

11

event the local law of the other state will be applied."  Restatement (Second) of Conflict of Laws § 146 (1971).

Defendant's arguments applying some of the standards above to conclude that Illinois law cannot possibly govern here are unavailing for several reasons.  First, Defendant presumes that the instant action "sounds in tort."  However, Plaintiff's state-law misappropriation claim is based upon statutory law of the various jurisdictions that are included in Plaintiff's pleadings and neither party addresses how, if at all, the implication of a statute could affect the factors the Court must apply.  While it may be that the ultimate issue of misappropriation of trade secrets "sounds in tort" such that the "significant relationships test" as set forth in §§ 145-146 of the Restatement applies to determine which state law governs, the parties have not briefed this issue.

Secondly, Defendant argues that Illinois law cannot govern based upon the application of the above choice of law standards as *Illinois* courts, and not *Florida* courts, apply the standards. Defendant argues, consistent with § 146 of the Restatement that the "test [to be applied] incorporates a presumption that the local law of the state where the injury occurred should govern unless another state has a 'more significant relationship' to the occurrence or to the parties." (DE 77 at 4) (citing, in part, *Foster v. United States*, 768 F.2d 1278,1280 (11th Cir. 1985) (applying the "most significant relationship" test as Illinois courts apply it)).  Defendant's cited authority, however, applies the test as courts in Illinois apply it.  Indeed, Defendant's entire argument applies the significant relationships test as Illinois courts apply it to tort claims to support his position that the proposed IUTSA claim is futile because "Illinois is not the state with the most significant contacts with this action."  (DE 77 at 2, 5-10).

Thirdly, the Court lacks briefing on how the principles in § 6 of the Restatement apply to determine the choice of law issue.  The § 6 "Choice of Law Principles apply to all areas of law[,]

which determine choice of law through a most significant relationship test, [including] issues [sounding in] tort." *Grupo Televisa, S.A.*, 485 F.3d at 1240. Defendant, however, does not undertake a complete analysis of the principles in § 6 of the Restatement. Further, although Defendant argues that the IUTSA claim that Plaintiff seeks to add violates Florida's public policy, Plaintiff has not briefed the choice of law issue in full, nor has Plaintiff addressed Defendant's policy argument.

Fourthly, Defendant is incorrect in stating that "Illinois does not have *any* significant contact with the parties or claims in the instant action." (DE 77 at 1) (emphasis in original). Should the issue "sound in tort," the parties' contacts with Illinois and how those contacts relate to the alleged conduct and harms at issue will be relevant to determining if Illinois law applies to a misappropriation of trade secrets claim. Furthermore, at this stage of the proceedings, I must view the allegations in the light most favorable to Plaintiff. *Hishon*, 467 U.S. at 73; *Am. United Life Ins. Co.*, 480 F.3d at 1057. Indeed, Plaintiff alleges several pertinent facts regarding contacts with Illinois. Plaintiff alleges in the proposed First Amended Complaint that it is owned, ultimately, by Marmon Holdings, Inc., which is headquartered in Illinois. (DE 51-1 at ¶1). The Confidentiality Agreement, between Marmon Holdings, Inc., its direct or indirect subsidiaries, and Defendant, is governed by Illinois law. (DE 17-1). Also, the proposed First Amended Complaint alleges that Defendant had multiple contacts with Illinois "in connection with his job responsibilities while employed by [Defendant]." (DE 51-1 at ¶90).

Given Plaintiff's allegations, even if §§ 145-146 of the Restatement apply, I cannot say that Plaintiff's allegations fail to "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 150. Consequently, I cannot determine that the proposed IUTSA claim is futile at this juncture.

Indeed, the allegations refute Defendant's contention that "Illinois does not have _any_ significant contact with the parties or claims in the instant action."  (DE 77 at 1) (emphasis in original).

However, I do not decide, nor is it necessary to decide at this time, if such allegations alone, or when combined with Plaintiff's other allegations, are sufficient to satisfy §§ 145-146 or the § 6 Choice of Law Principles from the Restatement.  Rather, as previously noted, I find that it is premature to address whether §§145-146 of the Restatement apply or how the Choice of Law Principles from § 6 apply to resolve the choice of law issue before the parties have had a full opportunity to brief the issue.  Should the parties agree, or should the Court find after further briefing, that a choice-of-law analysis akin to the analysis in tort cases is appropriate, conducting such an analysis will involve a fact intensive inquiry into the interests of the various jurisdictions and their relationships with the parties involved, as well as assessments of the policy implications of applying the law of one jurisdiction over another.  *See generally Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999 (Fla. 1980).

In sum, given the lack of appropriate briefing as to the complex issues relating to choice of law, the early stage of the litigation, and the limited factual record, I decline to find that Plaintiff's proposed amendment is futile on choice of law grounds.  *Boardwalk Fresh Burgers & Fries, Inc.*, 2021 WL 372825 at *2; *Joe Hand Promotions, Inc.*, 2012 WL 1289731 at *2.  Furthermore, a liberal standard applies to amending pleadings.  *Stevens v. Gay*, 864 F.2d 113, 116 (11th Cir. 1989) (citing Fed. R. Civ. P. 15(a) and stating that "[t]he Federal Rules of Civil Procedure provide for liberal amendment of pleadings").  Therefore, I conclude that Plaintiff should be afforded the opportunity to amend its complaint.

## **CONCLUSION**

Accordingly, it is hereby

**ORDERED and ADJUDGED** that the Motion to Amend (DE 51) is **GRANTED**.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida on this 23rd day of July 2021.

**Jared M. Strauss**
**United States Magistrate Judge**

Copies furnished via CM/ECF to:

Hon. Rodolfo A. Ruiz, II
Counsel of record